Thank you, Your Honors. My name is Michael Tone. I represent Greenwich Insurance Company. May it please this Court, there are two documents that are relevant relative to the issue of whether there's a duty to defend of Greenwich Insurance Company with respect to this matter. The first is the policy itself and the second is the complaint. Addressing the policy itself, there are really two provisions that I will concentrate on today. The first is the insuring agreement. And in that provision, in the insuring agreement, which is on the first page of the policy, it's 142 in terms of the record, the insuring agreement reflects that in order for coverage to be implicated or triggered at all, there must be an act or omission in the performance of real estate services. As Your Honors know, under Oregon law, if a term is defined, that definition is operative and controlling. Real estate services are defined in this policy, as Your Honors know. And real estate services... Could you speak up just a little, please? Yes, Your Honor, I apologize. Real estate services are defined on page 147 under the definition. And under those services, it talks about various services all dealing with real estate. This definition does not at all talk about financial advice, investment advice, anything of the like. Well, you know, the problem with your argument, though, I think, as the district court pointed out, the district court took a look at the total picture. I understand that, Your Honor. All of this arose in the connection with the performance of real estate services, correct? But the claim only arose, Your Honor, in the performance of financial and investment services. Correct me if I'm wrong, but after the sale of the property was completed, or when they were carrying out the sale and implementing the sale, it was arranged in such a way so that the exchange could take place, correct? It was a 1031 exchange, Your Honor. The whole way the sale was accomplished was to facilitate that exchange, right? Well, the allegation is that there's a 1031 exchange. Well, that's what's alleged in the complaint, correct? That is a 1031 exchange. Why isn't that part of real estate services? Because the real ‑‑ the claim doesn't arise out of ‑‑ After speaking to the mic, please. The claim, it talks about in the ‑‑  I apologize. There you go. In the insuring agreement, it talks about pay as damages by reason of an act or omission in terms of the performances of real estate services. The acts or omissions, if you look at paragraph 22 of the complaint, Your Honor, the predicate acts that are alleged in terms of the wrongdoing in paragraph 22, all of those involve TICs, tenants in common. They don't involve, quote, unquote, real estate services. They do involve the investment of real estate. There is an allegation that says the sale of the home was negligently structured, and that sounds an awful lot like the kinds of things a real estate agent would do. But it was structured in connection with the financial investment advice, Your Honor. It wasn't ‑‑ there wasn't a criticism that there was a real estate service, i.e., something was wrong with the sale, that that ‑‑ Am I right that real estate agents are needed to do these 1031 exchanges, that there are only certain people who can structure them, and that real estate agents are one of those sets of folks, right? Presumably, Your Honor. I think all sorts of other sets of folks can do that. And it isn't as if they can't do it legally, Your Honor. The question is, as you know, does this policy cover that sort of activity? And that's the issue. It's just like there are ‑‑ an analogy would be lawyers can render investment or financial advice, but a legal malpractice policy is not implicated by that advice. And that would be an analogy that I guess I would use, Your Honor. But I think you're right. I think that that's, as alleged, the appellants were ‑‑ I'm sorry, the appellees were involved with respect to the 1031 exchange. But the ‑‑ all of the predicate controlling allegations relative to wrongdoing are in paragraph ‑‑ in both counts one and two are in the paragraphs A through F, I'm sorry, A through G, all of which talk about tenant in common. And what is this called in count one? It's called financial abuse. It's an elder abuse count, but the financial abuse is the phrase that's used. And I think I counted something like 11 times in the complaint, which is controlling, and if we just go by the four corners of the complaint, which is we all know what we have to do, I think there are 11 different allegations relative to wrongly ‑‑ financial advice, bad investment advice, et cetera. You're right. That's the dominant flavor of the complaint. But all that's needed to trigger a duty to defend here, and that's all we're talking about. We're not talking about a duty to identify at this point. All that's needed is just that one part of the claim relate to or arise out of real estate services, right? If the wrongful acts, act or omission, if the act or omission relates to the real estate service, it's our position with all due respect, Your Honor, that the act or omissions here relate exclusively to the tenants in common. That is our position. We understand and recognize, Your Honor's correct, that the duty to defend is broad. But we don't think, and we'd argue that this is not implicated. Well, let me ask you this then. In terms of the damages request, how do you square the ‑‑ I can't remember if they're asking for $3 million in damages when only a million dollars was invested in the tenants in common. So how do you square that with the notion that this was all about just the investment advice? Because all of the damages flow from the tenants in common. In my reading or our reading of the complaint, and I guess why we believe that are those allegations A through G in 22, and that none of those allegations A through G in paragraph 22 relate to or talk about folly advice relative to the sale of the home. Except the negligent structuring of the sale, which can't get any more closely tied to the actual just straight up real estate transaction that a real estate agent would do. But the structure of the sale all had to do with the way at which the tenants in common were invested in or purchased. Okay, but just come back to my question then. So a million dollars is invested. The allegation is that, hey, these things haven't performed very well. I've lost money. And you guys told me that I was going to get these great returns. So wouldn't the maximum damages, if that were the sole theory, be a million dollars, that you lost all the money that I invested? Well, there could be emotional distress damages, personal injury damages that deal with or relate to exclusively the investment of the tenants in common. If the sale of the home were the only thing involved, we recognize those are real estate services. But when they go on to render investment advice and financial advice, which is the complaint obviously triggers or doesn't trigger, depending on your point of view, the insuring agreement. The complaint drafted by a stranger to Greenwich Insurance Company, in our view, highlighted, emphasized to the exclusion of everything else, the investment and financial advice. But the second argument I would make has to do with Exclusion J, as Your Honors know. And Exclusion J is also the two things about it, three things, Your Honors, about Exclusion J. The preamble is the company will not defend or pay any claim based on or rising out of. Obviously, based on or rising out of has been broadly defined by Oregon case law, flowing from, etc. It's a very broad preamble. Property syndication, real estate investment trusts, as Your Honors know, are also defined terms by the policy. When we look at, when Greenwich looks at the operative complaint with respect to either of those, both of those actually defined terms. Well, let's start with real estate investment trusts. Okay. I happen to have that language in front of me. Just walk me through how you think that that exclusion is triggered for real estate investment trusts. Any trust or association, it's clearly a trust or association. What is? The Gibson Trust. And so is the association as the tenant in common investment. That is an association via paragraph 11. Because paragraph 11 in the complaint talks about a TIC is a highly risky and illiquid investment that pools money from investors to purchase and own a single property. That obviously is a language of the complaint. And we are, we're all bound by that language so we don't have to guess what was meant. So wait, are these TICs, let's put aside your theory that the Gibson Trust is what triggers this. Let's focus on the TICs. Your argument is that what, they qualify as an association or an entity under this definition? Yes, it qualifies, it would qualify as an association. And it goes on to say designed or used. It doesn't need to be formulated for or designed. It could be designed or used to permit investments in real property which are held or managed. There are allegations that these are held for the trust to the beneficial owners of the trust. What this is arguably meant to, and again, I know we're restricted to the complaint and the policy. But as your honors know, there are, I think, statutory and or common law definition of REITs, and this was designed arguably to be broader than that, particularly because of the based on or arising language. When we jump down to the property. Well, I still don't, you know, let me ask you this. The language in the definition of real estate investment trust talks about such interest, under which such interest are held and managed for the beneficial owners of the trust or other legal, or other entity. Right? Yes. So are we talking about the Gibson Trust or are we talking about the investors of the. It would be the TIC. We're talking about the, so. It would be the TIC. So where are the allegations in the complaint that show that supports that? That's what I couldn't. We believe that. It seems. We would point to 12 through 16, your honor. You raised some concerns about this part of it, but what concerned me actually was the syndication. The property syndication definition? Right. Yes, which is on the preceding page, your honor, as you know. And that talks about formation or engagement in a general limited partnership, unincorporated association. It appears to us that because of paragraph 11, as I said before, this is the TIC would be an unincorporated association and it's for the purpose of investment gain. How do you know that, though? I mean, that's what I can't. You can't tell. That may be what it proves to be. But based on the allegations in the complaint, just some sort of investment scheme. But it's more, well, it's 11 is, in our view, your honor, very specific relative to what a TIC is. It's a definition. Presumably there are some complaints where we, you know, there wouldn't be a definition. But in this particular complaint, there is a definition. And as your honors know, it's, you know, policy interpretation is always an issue of, you know, comparing the policy to the complaint. And particularly when, in this case, there really isn't any controlling case law with respect to this. So it's a matter of policy interpretation. But isn't the policy here to construe ambiguities against the carrier who has a duty to defend? Isn't that what this is mainly about? Well, your honor, yes, in terms of if there is an ambiguity. Our view is this is not, these provisions are not ambiguous. Our coverage for claims based on or rising out of property syndication or real estate investment trust. And here the complaint is ambiguous as to who manages the tenancy and common interest. The Gibson Trust or the tenancy and common administrators. So under Oregon law, I would think that Greenwich Insurance has a duty to defend if there are such ambiguities. And we have one there. And the complaint, as I understand it under Oregon law, is to determine whether there's a possibility of coverage under the policy. And so the district court, I don't believe, heard when it concluded that a plausible reading of the complaint is one that says the entire transaction from the sale of the property to the investment creates a complaint that states a claim against exclusion J. Did you want to respond? I mean. I understand your position. We've got to, that's the way we're supposed to interpret these exclusions as well as the coverage provisions. And I think that, I don't think that the district court heard when it concluded that the underlying lawsuit, that's the lawsuit in the Oregon State Court, alleged sufficient facts to trigger Greenwich's insurance duty to defend the bank offers. And I mean the insurer has the duty to defend if the complaint provides any basis for which the insurer provides coverage. That's the Ledford case. And even if the complaint alleges some conduct outside the coverage of the policy, the insurer may still have a duty to defend if certain allegations can impose liability for conduct covered by the policy. And here the allegations concerning the bank offers conduct and the allegations concerning losses suffered by Verrill Gibson do give rise to an ambiguity as to which act or omission is alleged to be the cause of the damages. And so I don't see why the district court erred because under Oregon's law, any ambiguity with respect to whether the allegations could be covered is resolved in favor of the insurer. Explain that to me. And your time is almost up, but go ahead. If you can have a quick response to it. My quick response, Your Honor, is if you look at paragraph 22 in the preamble paragraphs, the gravamen of this is financial investment advice. This policy, via the insuring agreement and exclusion J, does not and is not meant to cover investment or financial advice, and therefore there is, in all due respect, Your Honor, there is no possibility of coverage, and thus there's no duty to defend. And I do appreciate your listening to me, and my time's up, I know. Yes. Thank you. Thank you, Your Honor. We'll hear from the other side. May it please the Court, Tom Sondag appearing on behalf of the appellees. Please speak into the mic. Is this better, Your Honor? Yeah, just log in. Okay. Now, all of Greenwich's arguments in this case are focused on the tick purchases, and we think there's a lot of reasons why those arguments are wrong. But we also think, and I don't need to recount each of those today, I think there's a simple reason why those arguments fail, and that is that the State court complaint does not assert liability. The member is speaking to the mic, please. The State court complaint does not assert liability based only on the tick purchases. It asserts liability based on the sale of the trust's property. The State court complaint says that that sale was negligently structured. Now, what are we talking about here, negligently structured? This was, as we know, a 1031 exchange, and the purpose of a 1031 exchange is to avoid capital gains tax on property that is held for business or investment purposes. Now, the underlying sale here involved a personal residence and what the State court complaint calls the pasture property. The personal residence didn't qualify under Section 1031, but the pasture property did. And so in connection with the sale, there had to be an allocation in the price that was paid between the personal residence and the pasture property, and the State court complaint alleges that that was negligently done. The State court complaint is saying, in effect, you should not have allocated a million dollars to the 1031 exchange, and it would not matter whether that's an investment in a tick or any other business or investment real estate. It was the $1 million allocation. That alone is negligence in the sale of the property. Those are real estate services. There's no debate, and I think I heard counsel acknowledge that they recognize that the representation in the sale would involve real estate services. Now, there's a second point to be made here, again, a very straightforward point based on the sale, and that is that under Oregon law, there can be no claim in negligence. Now, Your Honor pointed out that the financial abuse claim has a $3 million claim. That's the economic damages, the million dollars, plus something else. The negligence. Please speak into the microphone. The negligence claim. I'm sorry. I'm too tall, Your Honor, but I'll... You're too what? I'm too tall. You're too tall? I'm going to do my best. I'm leaning over the... Well, we'll cut your legs off. All right. All right. Under Oregon law, a negligence claim for purely economic loss, that's the negligence claim was for the million dollars only, requires a special relationship. You cannot, if there's no injury to person or property, there has to be a special relationship, something that gives rise to duties beyond the common law foreseeability that arises under common law negligence. That special relationship is specifically alleged in the state court complaint to arise out of the banker's representation of the trust and Ms. Gibson in both the sale of the trust property and in the purchase of the ticks. And, in fact, that allegation, and that's paragraph 39 of the complaint, it refers to the Oregon real estate code. So hang on a minute. Sure. Let me just make sure I understand the dichotomy you're trying to draw here. Right. Do you concede then that the advice to invest in the, I don't, ticks just sounds like a nasty word, in the CICs, whatever you call them, that that advice is not real estate services? You concede that? No. No, no. I mean, the complaint itself, and, again, if you look at paragraph 39. How does that have anything to do with real estate services? Well, the complaint is. It sounds like advice that a financial advisor would give, but not advice that someone who's just representing you in the sale of real property would do. Well, I think that there's a confusion, and it's drawn here by Greenwich, between a tick, which under Oregon law certainly is real estate, a tenancy in common interest is real estate. And the state court complaint alleged that the purchase, and so there's, you want to talk about an ambiguity, the state court complaint speaks of ticks occasionally in referring to the totality, but what the trust acquired here was an interest in real property. If it had not been an interest in real property, and, by the way, state court complaint says that expressly. It says the purchase of the ticks, a real estate transaction, and the reason it said that is because it was relying on ORS 659. I'm sorry, 696.810, which, again, governs a real estate agent in connection with the purchase of property, okay? If it had not involved real estate, there wouldn't have been a 1031 exchange. You wouldn't have like-kind property. What Greenwich is trying to do is manufacture some sort of an association or entity after the fact. That wouldn't have qualified. You couldn't, you can't invest in an entity and say that I get a 1031 treatment here. I have sold real estate that was held for business or investment purposes. I've got to acquire property, real property. I can't acquire an interest in an entity. I can't, and that's why, most clearly, the ticks involved real estate. And so, no, I do disagree with that, Your Honor, but wholly aside from that, there are the allegations in this complaint that clearly relate to the sale of the trust property, and that was the point I was making in addition. I think that's the simplest point. I think that if you focus on the tick purchases, it gets a little more complicated. But, no, that's got to be a real estate transaction. It's got to involve the bank offers as agents for, and acting as real estate agents for the trust in the purchase of the tenancy in common, as the state court complaint says, a real estate transaction. What about the exclusion? Yeah. Well, that, again, is, that's my point. Those exclusions are, you see, the exclusion J speaks of property syndication. Right. Based on or arising out of property syndication or real estate investment trust. And then it defines property syndication to mean the formation or engagement in. Okay, first of all, the bank offers are alleged nowhere to have formed or engaged in anything. The formation or engagement in a partnership, da-da-da-da-da, or similar organization. The investment in the ticks cannot be, cannot fit under that, because that's not a real estate transaction. It wouldn't have qualified as a 1031 exchange. And the same goes for the real estate investment trust. And I would note, by the way, that counsel has changed his argument here. The argument in their brief, in their opening brief, was that the real estate investment trust, the trust or entity designed or used to permit investment in interest in real property, was the Verrill Gibson Trust, only in their.  Sure. Because it's not, to me, it's not an answer to say that, well, the, I don't know how to say these folks' names. Is it Bancofier? Bancofiers. Bancofiers. It's not enough to say that they themselves didn't engage in the formation of a general limited partnership. I mean, the exclusion is much broader than that. It just says the claim has to be based on or arise out of anybody who either formed or engaged in property syndication. Right. And it seems to me that if, as long as the TIC interests meet the definition that's given, it's going to get swallowed up. I mean, your claims are going to get swallowed up. I have a little trouble with that, Your Honor, and here's why. I think the Oregon Supreme Court would have a little trouble with that. They're going to interpret that. I think that this is conduct that the insured would assume is something they can control, that they are engaged in the formation or engagement of, and that's the Nowacki case that we cite in our brief. That's the only case that I saw that really focused on that clause. But it assumed that, and I think that's a reasonable interpretation, which, of course, is what the Oregon Supreme Court would look at, to assume that it's the insured that engaged in or formed this association. And so I guess I would disagree with you on that. But even if you say, no, I don't buy that, well, then you've got to look at, okay, what are they engaging in or forming, and it's a partnership and various other sorts of associations or similar organization for the purpose of investment or gain. They didn't do that, yes, but even if, if they had, that wouldn't have qualified for a 1031 exchange. Again, the State court complaint alleges that the purchase was of an interest, okay? It's a tenancy in common interest. I'm sorry. I'm just looking at the language, and I'm trying to follow what you're saying. But it says, let's just say that the TICs constitute an unincorporated association, okay? Let's just say it falls within that for the purpose of investment or gain from an interest in real property. That seems to describe exactly. But if the TICs, if they were investing in an unincorporated association, it wouldn't have qualified under Section 1031. That's the point I'm trying to make. And this, we've got to go back to that. This was a 1031 exchange. That's what the State court complaint says. And that's why I think, again, and we've got to interpret the ambiguities in this complaint in the favor of the insureds here. You've got to interpret that to mean, as I think it does, that this was a 1031 exchange. And we've got to go back again to the sale. That's where this was structured for a 1031 exchange. And, again, that's a separate allegation that says that it was negligently structured. So under Oregon law, the State court complaint has to be read in favor of the insured to determine whether any allegation, any allegation gives rise to coverage. If there's any possibility, then there's coverage. Any ambiguity has to be resolved in the insured's, the bank of fear's favor. I guess I don't see why you think that the, even if we assume that the TIC transaction does constitute a 1031 exchange, I don't see why you read that as being mutually exclusive of the property syndication definition. It seems to me that the two can easily coexist. What am I missing on that? Well, isn't the complaint ambiguous when it comes to how many people invested in the tenancies in common? Greenwich asserts that the innocent purchase of property by two people implies that an unincorporated association would mean any investment property purchases involving two or more people. But more than two people is an even broader understanding of property syndication that does not necessarily follow from the meaning of the properties of the policies language. That language is very broad when it's defining syndication. As the formation of or engagement in a general or limited partnership, joint venture, unincorporated association, similar organization for the purpose of investment or gain from an interest in real property, including but not limited to a sale, exchange, trade, or development of such real property on behalf of others. And that's a pretty broad definition. It's certainly, I think, broad enough to encompass these tenants in common. I don't really like the acronym TICC. It just reminds me when I was back in Virginia in the Marine Corps, we'd go out in the boondocks and come back loaded with TICC. I'm trying to figure out a better acronym. Well, you know, that's part of the problem here. I think TICC is very easy to say rather than tenancy in common. And I do think that that's an ambiguity throughout the complaint. There are different references to TICC. And so there are some references to TICC in the sense of an association, but there's also references to TICCs as the end. This is what the bank affairs are alleged to have done. It's the representation of the trust in the purchase of a TICC, which is a tenancy in common interest as a TICC for complaints as a real estate transaction. So that's where I think that if you were to take the reading, and respectfully I've disagreed with some aspects of how you've read that, I still think that the State Court complaint is not clear enough to suggest that it would fall within that, that these allegations are ambiguous enough, even with respect to the TICCs. And I want to go back, of course, to the fact that we've got a negligently structured sale here that in and of itself is alleged to give rise to liability that has nothing to do with the purchase of the TICCs, that we think that there would be coverage. So we think that the district court got it right. Greenwich has a duty to defend, and we urge this Court to affirm. Thank you. Thank you, counsel. Your time is up. We heard you exceeded your time by three minutes, so we're going to submit it. All right.
judges: PREGERSON, PAEZ, WATFORD